# *Ex Parte* Key.

## *Habeas Corpus.*

(Decided May 16, 1912.　59 South. 331.)

1. *Homicide; Evidence; Dying Declarations.*—Where the deceased died within three hours after he was found mortally wounded, and his death was caused by two pistol shots, and the attending physician stated in his presence that he had no chance to live, deceased's mind being clear, declarations made by him, one of which was made at the beginning of the death agony, that the defendant had shot him, were admissible as dying declarations.

2. *Same.*—As a predicate for the admission of dying declarations it is not necessary to show that the declarant expressed the belief that he must die; where the declarations are made under a sense of impending death, though nothing was said by the declarant as to his belief, such declarations are admissible when a sense of impending death may be inferred from the attendant facts, such as the nature and extent of the wounds, the physical state, conduct and contemporaneous expression and death following soon on the declaration.

3. *Same.*—While its credibility is for the jury, a statement by a decedent that he knew that defendant shot him because his cousin had told him that decedent would get him, was admissible, the proper predicate having been laid.

4. *Appeal and Error; Review; Granting Bail.*—The appellate court will not review or disturb the order of the lower court declining bail unless the denial is clearly erroneous, and where the lower court had the advantage of seeing and hearing the witnesses, and the evidence was sufficient to justify a reasonable belief of probable cause for holding the defendant without bail, such an order will not be disturbed on appeal.

[Ex Parte Key.]

APPEAL from Russell Probate Court.

Heard before Hon. H. T. BENTON.

Application of Elbert Key for bail under an indictment charging him with murder. From an order denying bail, petitioner appeals. Affirmed.

GLENN & DE GRAFFENRIED, for appellant. .The dying declarations were not admissible.—*Justice v. The State*, 99 Ala. 180; *Young v. The State*, 95 Ala. 5; *Blackburn v. The State*, 98 Ala. 53; 4 Enc. of Evid. 925; *Sanders v. The State*, 56 South. 69; *Sims v. The State*, 139 Ala. 74; *Hussey v. The State*, 87 Ala. 121; *Willis v. The State*, 74 Ala. 21.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. A large discretion is reposed in trial courts in granting or refusing bail, and it should be clear that the trial court erred before its decision is disturbed.—*Ex parte McAnally*, 53 Ala. 495; *Butler v. The State*, 1 Ala. App. 265. The evidence is sufficient to warrant the trial court in refusing the application.—*Ex parte Warrick*, 73 Ala.

PELHAM, J.—The petitioner does not contend but that the crime committed, and for which he is being held under an indictment charging him with the commission thereof, is one for which the guilty party might properly be punished capitally, but does contend that there is no legal evidence connecting the petitioner with the commission of the offense; that there is not sufficient admissible testimony showing there is a probable cause for holding the petitioner without bail charged with the commission of the crime.

The evidence shows that the deceased, Arthur Green, was found lying upon a public street in the town or vil-

lage of Hurtsboro, in Russell county, within 50 yards of his home about 7 o'clock in the evening, mortally wounded, and was carried to his home, where he died in about 2½ hours after he was first found on the street. The deceased was wounded in two places; the wounds having been inflicted by pistol shots, one of the shots taking effect in the thigh, and the other entering the cheek about an inch below the left eye and ranging downward and lodging in the back of the neck. The testimony of the defendant tended to prove an alibi, and the defendant himself was a witness and denied participation in the crime and all knowledge of it. The state's evidence connecting the defendant with the commission of the offense consisted in the proof of threats made by the petitioner against the deceased on the evening preceding the night the deceased was killed, and the dying declarations of the deceased. The principal evidence showing probable cause that petitioner was guilty of having committed the crime is the dying declaration of the deceased, which counsel for petitioner ably and most earnestly contends was improperly admitted because no sufficient predicate was laid from which it would appear that the declaration was made under the conviction of impending death.

In this we cannot agree with counsel, for it is shown by the evidence set out in the transcript that the doctor who was called to attend the deceased when he was found in the street suffering from the pistol-shot wounds, and who had deceased removed to his home and attended him there, testified that after the deceased was taken to his home he (the doctor) stated in the presence and hearing of the deceased that he had but one chance in a thousand to live; that at this time, although mortally wounded, the mind of the deceased was clear; that he was able to answer questions and knew

the doctor and the fact that he was a physician; and that he died very shortly afterwards. It is also shown by the testimony that subsequently, and when deceased "was beginning to get into the death agony" and just before he died, but while still conscious and able to answer questions, the doctor informed one Tucker in the presence and within the hearing of the deceased that there was no chance; that "there wasn't any hope" for him to live. After each of these statements was made by the doctor at the bedside of the deceased, he was asked by the doctor who shot him, and he replied, "El Key shot him." While it is not shown by any positive testimony that the deceased heard the statements made by the doctor, they are shown to have been made in the hearing of the deceased when his mind was clear and when he was able to answer questions and very shortly before his death. There can be no question but that at the time the declarations were made the deceased was in extremis, and we think it sufficiently appears that he was convinced that such was his condition.

It is not an essential to the admissibility of dying declarations as evidence that the declarant express the conviction that he must die; if made under a sense of impending dissolution, that is sufficient, notwithstanding nothing was said by the declarant expressing the conviction.—*Wills v. State,* 74 Ala. 21. The *Wills Case* on the proposition of dying declarations has been cited with approval in the following cases: *Ward v. State,* 78 Ala. 446; *Jordan v. State,* 82 Ala. 4, 2 South. 460; *Hussey v. State,* 87 Ala. 129, 6 South. 420; *Young v. State,* 95 Ala. 8, 10 South. 913. See, also, *Sanders v. State,* 2 Ala. App. 13, 56 South. 69, in which this court held that it is not an indispensable prerequisite that the deceased should in so many words express his conviction that he was in extremis.

To establish the prerequisite facts showing a proper predicate, "it is not necessary," says the Supreme Court in *Ward v. State, supra,* at page 446 of 78 Ala., "that the declarant shall express a conviction or belief that he must or will die. They may be reasonably inferred from attendant facts and circumstances, as any other fact of judicial ascertainment. Resort may be made to the nature and extent of his wounds, his physical state, his evident danger, his conduct, his contemporaneous expressions, the occurrence of death soon thereafter, and all other circumstances at the time; and if from these the reasonable inference is that the declarations were made under a conviction of impending death, it is sufficient.—*McLean v. State,* 16 Ala. 672; *Wills v. State,* 74 Ala. 21; *Kilpatrick v. Com.,* 31 Pa. 198; 1 Green. on Ev. § 158; Whar. Crim. Ev. § 282." It is also said in the opinion of the court in this case (*Ward v. State, supra,* at page 447 of 78 Ala.) : "The circumstances shown by the evidence [the deceased, as in this case, having been mortally wounded by having been shot down in the public road just after dark, and dying shortly thereafter from the two pistol-shot wounds], in the absence of anything indicating a hope of recovery, justified the court in admitting the dying declarations. —*Johnson v. State,* 17 Ala. 618."

In the case of *White v. State,* 111 Ala. 92, 96, 21 South. 330, 331, it is said by the justice rendering the opinion of the court: "It [the dying declaration], in connection with her conditon and almost immediate death, carried with itself sufficient evidence of a sense of impending death to justify the court in admitting it." See, also, *Jarvis v. State,* 138 Ala. 17, 34 South. 1025; *McLean v. State,* 16 Ala. 672.

"No rule," says Prof. Wigmore, "can be laid down. The circumstances of each case will show whether the

requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances."—2 Wigmore on Ev. p. 1809, § 1442, cited with approval by the Supreme Court in the case of *Parker v. State,* 165 Ala. 1; 51 South. 260.

In this case the declaration is shown by the evidence to have been made by the declarant at a time and under circumstances when he must have realized that he was mortally wounded, and on one of the occasions this declaration was made at a time when "beginning to get into the death agony" immediately preceding his death, and after the attending doctor had stated in his presence that there was no hope for his recovery.—*Jarvis v. State, supra.*

The fact that the deceased, as testified by the witness Tucker stated that he knew it was Key who shot him because his cousin had told him that Key was going to "get me" (him), does not make the declaration as testified by the doctor inadmissible. The jury may consider these matters in determining the weight and credibility they will give to the declarations, but it does not go to the question of a sufficient predicate, which was for the court to pass upon.—See *Ward v. State,* 78 Ala. 441; *Jordan v. State,* 81 Ala. 20; *Faire v. State,* 58 Ala. 74; *Moore v. State,* 12 Ala. 764, 46 Am. Dec. 276.

The application of the petitioner here to be granted bail where it has been denied by the primary court on oral evidence will not be granted by this court unless it appears that the denial by the primary court was manifestly and clearly erroneous.—*Ex parte McAnally,* 53 Ala. 495, 25 Am. Rep. 646; *Ex parte Nettles,* 58 Ala. 268; *Ex parte Richardson,* 96 Ala. 110, 11 South. 316. And it is our conclusion that the judge of probate properly admitted the dying declaration; that with it in evidence there was sufficient evidence to show a probable

cause for holding the petitioner to answer the charge; that the application for bail was rightly denied; and that therefore the judgment of the court below should be affirmed.

.     Affirmed.          .